J-S06031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.V., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.P.-F., MOTHER | : : : : : : : : | |
| | : | No. 2186 EDA 2020 |

Appeal from the Decree Entered October 26, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000594-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.V., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.P.-F., MOTHER | : : : : : | |
| | : | No. 2187 EDA 2020 |

Appeal from the Decree Entered October 26, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002745-2016

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:           **FILED APRIL 15, 2021**

In these consolidated cases, D.P.-F. (Mother) appeals from the decree

entered in the Court of Common Pleas of Philadelphia County (trial court)

_____

[*] Retired Senior Judge assigned to the Superior Court.

involuntarily terminating her parental rights to her daughter, D.V. (Child)[1] (D.O.B. 8/21/09) and changing Child's permanency goal to adoption.[2] We affirm.

## I.

## A.

The City of Philadelphia Department of Human Services (DHS) first became involved with Child's family in October 2016 because of Child's truancy. Although DHS's initial dependency petition was dismissed, the agency again became involved with the family in March 2017 based upon reports of drug distribution by Father and Parents' lack of suitable housing and heroin abuse.

On April 18, 2017, the trial court adjudicated Child dependent and ordered DHS to take custody of her. When Child disclosed that Father had been sexually abusing her, his visitation with Child was suspended. Mother tested positive for opiates and marijuana on multiple occasions. On March 15, 2018, the court found that Mother posed a grave threat[3] because she had

---

[1] Child is alternately referred to as D.L.V. in the record.

[2] The parental rights of Child's birth father, M.V. (Father) were also terminated and he has not appealed that decision. Mother and Father are collectively referred to as "Parents" in this Memorandum.

[3] "The 'grave threat' standard is met when the evidence clearly shows that a parent is unfit to associate with his or her children." *Interest of L.B.*, 229 A.3d 971, 975 n.3 (Pa. Super. 2020) (citation omitted).

inappropriate discussions with Child about the sexual abuse investigation and court proceedings. On September 21, 2018, the court found clear and convincing evidence of child abuse by Father and ordered Parents to stay away from Child's school and foster home. As of February 1, 2019, Mother did not have appropriate housing and lived with Father.

**B.**

On August 8, 2019, DHS filed petitions seeking termination of Parents' parental rights to Child. The trial court held a hearing on the matter on October 26, 2020. At the hearing, former case manager and current case supervisor Sharri Henderson testified that she was first assigned to this case in late 2018. She testified as follows: Parents had mental health and substance abuse issues and there were concerns about truancy, domestic violence and sexual abuse in the home. Mother's initial objectives included participation in therapy and substance abuse treatment, along with submission to random drug screens but never progressed beyond supervised visitation with Child before the visits were suspended entirely in 2018 because of her inappropriate discussions with Child. Moreover, Mother did not complete drug and alcohol treatment and she tested positive for opiates on four occasions, although at the time of the hearing she was in a substance abuse treatment program. Henderson testified that it was difficult to keep in contact with Mother because she had been in and out of several rehabilitation facilities and had no steady employment. She opined that Mother had made

no progress towards fulfilling her objectives or alleviating the need for Child's placement. Child had not seen Parents for two years at that point and Henderson testified that reunification was not a viable option.

Henderson also testified that Child has resided with her foster parents since July 2019 and that Child has expressed that she wants to be adopted by them. Henderson stated that "[Child] is doing wonderful [with foster parents]. She's a part of the family. She's bonded with the family. She's bonded with the entire family, even extended members of the family." (See N.T. Hearing, 10/26/20 at 34-35). Henderson unequivocally testified to her belief that adoption by the foster parents would be in Child's best interest.

Child's therapist, Kristine Belinsky, testified that she has been working with Child since December 2019 because of her history of trauma including sexual abuse by Father, neglect by both Parents and her observation of their drug abuse. Belinsky testified that since Child began living with the foster parents, her behavior has improved, she is doing well in school and is very happy and bonded with the entire foster family. Child has indicated that she wants to be adopted and refers to her foster parents as "Mom and Dad." (*Id.* at 64). Belinsky testified that although Child loves Parents, it is not appropriate for them to be involved in her life at this juncture. She opined that the stability provided by the foster family has advanced her treatment and that adoption would facilitate her therapeutic needs, as she is safe and happy.

Dawn Barns, Child's case manager since December 2019, testified that Child shares a parent-daughter bond with the foster parents and that she is well-adjusted and thriving. Child is also bonded with their extended family and wants to be adopted. Barns opined that if the court terminated Mother's parental rights, Child would not suffer any permanent harm given that she has not had contact with Mother for two years and Mother does not acknowledge the sexual abuse by Father. Barns also testified to her belief that it is in Child's best interest to change her goal to adoption.

Neither Mother nor Father testified at the hearing or submitted any exhibits. At the conclusion of the testimony, the trial court specifically found the three DHS witnesses credible. It concluded that Mother has been non-compliant with her objectives and had made no progress towards alleviating the need for Child's placement. The trial court entered its decree terminating Mother's parental rights pursuant to § 2511(a)(1),(2),(5), (8) and (b) of the Adoption Act and changing Child's permanency goal to adoption under § 6351 of the Juvenile Act.[4] Mother timely appealed and she and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)(i)-(ii).[5]

---

[4] 23 Pa.C.S. §§ 2101-2938, 42 Pa.C.S. §§ 6301-6375.

[5] Our standard of review in termination of parental right cases

> requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate

**II.**

Mother contends the trial court erred in terminating her parental rights to Child pursuant to multiple subsections of 2511(a) and (b). Mother claims she has successfully completed mental health and substance abuse treatment programs in an effort to reunify with Child. Mother avers she has maintained sobriety since July 2020 and has secured appropriate housing and employment. Mother argues that any alienation in her relationship with Child was caused by the court's baseless decision to suspend visitation with her daughter. Mother also argues that termination of her parental rights is not in Child's best interest, given their strong emotional bond.

**A.**

Section 2511 of the Adoption Act governs the involuntary termination of parental rights and requires a bifurcated analysis:

> . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

---

> courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

***In re J.W.B.***, 232 A.3d 689, 695 (Pa. 2020) (citation omitted).

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of B.G.S.*, 240 A.3d 658, 662-63 (Pa. Super. 2020) (case citation omitted).

As noted, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1),(2), (5), (8) and (b) of the Adoption Act, which provides:

**(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

- 7 -

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

*　　*　　*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

It is well-settled that "[w]e need only agree with [the trial court's] decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights." *Int. of K.M.W.*, 238 A.3d 465, 473 (Pa. Super. 2000) (citation omitted). For the following reasons, we conclude that the trial court correctly determined that DHS met its burden of proof under subsections 2511(a)(2) and (b).

**B.**

We first address termination of Mother's parental rights pursuant to Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing

evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings.

*Id.* at 473–74 (case citations omitted).

Applying these principles, the record shows that Mother's history of opioid abuse, inadequate housing and employment, along with her inappropriate conduct concerning Father's sexual abuse of Child, rendered her incapable of parenting Child and caused Child to be without essential parental care, control or subsistence. At the time of the hearing, Child had been in placement for over three years and had not seen Mother for two years. The record contains no evidence that Mother is capable of performing parental duties and instead shows she had multiple positive drug screens, did not make progress from a mental health perspective and continued to reside with Father after the court found clear and convincing evidence of his sexual abuse of Child. Accordingly, we conclude that the trial court did not abuse its discretion

when it terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2).[6]

## C.

Having found that termination of Mother's parental rights was appropriate under Section 2511(a), the next step of our inquiry is to consider whether termination is in the best interests of Child under Section 2511(b).

> With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. In particular, we review whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. It is well settled that intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child.
>
> One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, with close attention paid to the effect on the child of permanently severing any such bond. The fact that a child has a bond with a parent does not preclude the termination of parental rights. Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary, and beneficial relationship. Notably, where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.

_____

[6] For similar reasons, clear and convincing evidence demonstrates that termination was also warranted under subsections 2511(a)(1), (5) and (8). Mother has not shown an ability to overcome her substance abuse, employment or living arrangement issues to the extent that she could appropriately care for Child, as she is in and out of different rehabilitation facilities. Although Mother claims in her brief to have made lifestyle changes to provide necessary support for Child, the trial court did not err in concluding that she fell short in this regard, especially in light of the fact she submitted no evidence on her behalf.

It is sufficient for the trial court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.

*Int. of K.M.W., supra* at 475 (case citations and most quotation marks omitted).

Instantly, Mother maintains that she and Child have a significant bond stemming from her past role as Child's primary caretaker and that the court's action in summarily suspending visitation alienated Child from her. She argues that termination is not in Child's best interest and would cause irreparable harm.[7]

In contrast, Henderson explained that Child had lived with the foster parents over one year at the time of the hearing and they have provided her with a safe, loving environment. Henderson, Belinsky and Barns all testified to Child's strong bond with her foster parents and to her positive relationship with her extended foster family. The DHS witnesses opined that termination of Mother's rights is in Child's best interest and would not irreparably harm Child. The trial court found:

The testimony has reflected that [Child] is stable and in a loving home and is bonded to her foster parents. The testimony reflects that there would not be irreparable harm if parental rights were terminated. This court has heard credible testimony from two case managers as well as [Child's] therapist. . . . Mother has been non-complaint [with case plan objectives since April 2017]

_____

[7] Although Mother makes these arguments in her brief, we reiterate that she did not testify or submit evidence at the termination hearing.

- 11 -

and made no progress toward alleviating the need for placement[.] This court finds . . . that it is in [Child's] best interest for the parents' parental rights to be terminated and for her to be freed for adoption.

(N.T. Termination Hearing, at 90).

We decline to disturb the court's credibility determinations or reweigh the evidence, which clearly demonstrates Child's strong bond with her foster family and her lack thereof with Mother, who she had not seen for two years due to Mother's inappropriate conduct and failure to make progress towards any of her objectives. The evidence supports the trial court's conclusion that terminating Mother's parental rights is in Child's best interest, as Child is well-adjusted and happy in the foster parent's residence and they care for her and meet all of her needs. Child refers to the foster parents as "Mom and Dad" and has repeatedly expressed her desire to be adopted by them. Mother's opioid addiction and inability to provide a stable environment for Child further establish that termination is in Child's best interest. We find no abuse of discretion in the trial court's decision to terminate Mother's parental rights to Child.

**III.**

Lastly, we address Mother's claim the trial court erred by changing Child's permanency goal to adoption pursuant to Section 6351 of the Juvenile Act. Mother argues DHS failed to make reasonable efforts to reunify her with Child and that adoption is not in Child's best interest. Mother also contends

that the goal change was made in contravention of the Juvenile Act's stated purpose of preserving the family unit whenever possible.

We begin by recognizing that a primary purpose underlying the Juvenile Act is to "preserve the unity of the family whenever possible **or to provide another alternative permanent family when the unity of the family cannot be maintained**." 42 Pa.C.S. § 6301(b)(1) (emphasis added). An agency is not required to offer services indefinitely, where a parent is unable or unwilling to properly utilize the instruction provided. ***See Interest of T.M.W.***, 232 A.3d 937, 947 (Pa. Super. 2020). Instead, the agency must redirect its efforts towards placing a foster child in an adoptive home after it has made reasonable efforts to return the child to her biological parents and those attempts have failed. ***See id.***

Additionally, a court is required to provide compelling reasons why it is not in the best interest of the child to return to her parents and to instead be placed for adoption. ***See*** 42 Pa.C.S. § 6351 (f.1)(5)(iv)(C). The child's best interest, safety, permanency and well-being must take precedence over all other considerations in a goal change proceeding. ***See In re R.M.G.***, 997 A.2d 339, 347 (Pa. Super. 2010), *appeal denied*, 12 A.3d 372 (Pa. 2010). The parent's rights are secondary and a goal change to adoption may be appropriate even under circumstances where a parent substantially complies with a reunification plan. ***See id.*** A court cannot subordinate a child's need

for permanence and stability to a parent's claim of progress and goals for the future. *See id.*

In this case, at the time of the subject hearing, Child had been in placement for over three years and Mother had not progressed beyond supervised visitation before the visits were suspended for her inappropriate conduct. During the time Child was in placement, the trial court had found at the permanency review hearings that DHS had made reasonable efforts to finalize Child's initial permanency goal of reunification. (*See* DHS Exhibits 4-18). Furthermore, as discussed in detail above, Child is well adjusted and happy in her home with her foster parents and she has become a part of their family. Because the record fully supports the trial court's decision to change Child's permanency goal to adoption, we conclude Mother's final issue merits no relief.

Decree affirmed.

*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/15/2021*