J-A02039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: A.M.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: F.H., FATHER | : | |
| | : | No. 788 WDA 2021 |

Appeal from the Decree Entered June 7, 2021
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
27 in Adoption 2021

BEFORE:  OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: JANUARY 14, 2022**

F.H. (Father) appeals from the decree entered in the Court of Common Pleas of Erie County (orphans' court) involuntarily terminating his parental rights to his daughter, A.M.A. (Child) (d.o.b. August 2017).  Counsel has filed an ***Anders***[1] brief and a petition for leave to withdraw.  After review, we affirm the decree and grant counsel's petition to withdraw.

**I.**

On March 3, 2020, the Erie County Office of Children and Youth (OCY) removed Child from the care of her mother, N.A. (Mother), and applied for an emergency protective custody order.  OCY alleged that Child was without

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***Anders v. California***, 386 U.S. 738 (1967).

proper parental care or control because of Mother's untreated mental issues; her extensive history with OCY; her substance abuse; her failing to show for drug screenings; and her leaving Child with inappropriate caregivers. At the time, Father was at an inpatient drug rehabilitation at Gateway Rehabilitation. The orphans' court granted the protective order and, after a shelter care hearing, ordered that Child remain in protective custody pending an adjudicatory hearing.

On March 17, 2020, the orphans' court held an adjudicatory hearing in which Father participated via telephone with counsel present. After the hearing, the orphans' court adjudicated Child dependent and ordered that she remain in foster care with a goal of reunification. The orphans' court also scheduled a three-month review hearing and gave Father the following treatment plan:

1. Submit to genetic testing to determine if he is the child's biological father;

2. Complete inpatient drug and alcohol treatment at Gateway Rehabilitation and follow through with any recommendations;

3. Participate in random urinalysis screens through Esper Treatment Center at the request of the [OCY];

4. Follow all rules of parole and refrain from any further criminal activity;

5. Obtain safe and stable housing and provide [OCY] with proof;

6. Obtain gainful employment and/or another source of income and provide [OCY] with proof; and

7. Continue to participate in mental health services through Stairways Behavioral Health and follow all recommendations.

Father appeared with counsel for a review hearing on June 5, 2020. The orphans' court found that Mother and Father were minimally compliant with their treatment plans but acknowledged that Father had been out of Gateway Rehabilitation for only a month and had little chance to comply with the plan. As a result, the permanent placement goal remained reunification.[2]

The orphans' court held another review hearing on December 9, 2020. Again, Mother and Father were minimally compliant with their treatment plans. The OCY caseworker testified that she had minimal contact with Father. When she finally did speak to Father on November 19, 2020, he sounded under the influence. At a home visit the next day, Father smelled of alcohol and appeared under the influence. She also related that Father failed to show for random urinalysis or follow-up on his drug and alcohol or mental health services. Based on the lack of progress, the orphans' court added a concurrent permanent placement goal of adoption and scheduled a three-month review hearing for March 10, 2021.

At that hearing, the orphans' court again found that both Mother and Father were noncompliant with their treatment plans. According to the casework, Father failed to show for any of his random urinalysis screens.

_____

[2] After the review hearing, paternity testing confirmed that Father was the biological father of Child.

When she visited him at home in February 2021, Father appeared under the influence. There were empty liquor bottles in the home and Father admitted that he was "high as f---" because he smoked marijuana. The caseworker also testified that Father continued to not follow up with any of the ordered mental health or psychiatric evaluation services. After the hearing, the orphans' court changed the permanent placement goal for Child to adoption.

On March 19, 2021, OCY petitioned for involuntary termination of Mother's and Father's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). Despite both being aware of the hearing, neither Mother nor Father appeared when the orphans' court held its hearing on the petition on June 4, 2021. At the hearing, the caseworker testified that she believed it was in Child's best interests to remain in her pre-adoptive home, as all her physical and basic needs were being met and she identified her caregivers as "mom and dad." The caseworker testified that neither Mother nor Father had visitation with Child because both failed to attend random urinalysis. When asked why he failed to attend, Father told the caseworker that he did not need to because he was "dropping for parole," even though the caseworker explained that he still needed to provide samples for OCY. She also related that Father's housing was unsafe for a child because his ceiling was falling in. At the end of the hearing, the orphans' court found that OCY had met its burden and entered a decree terminating both Mother's and Father's parental rights under Section 2511(a)(1), (2), (5), (8) and (b). While Mother did not

appeal, Father's counsel filed a notice of appeal along with a statement of intent to file an *Anders* brief. *See* Pa.R.A.P. 1925(c)(4).

## II.

Counsel petitions for leave to withdraw as counsel. Thus, before reaching the merits of Father's issues, we must first address whether counsel has properly sought to withdraw from this appeal. In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended *Anders* to appeals involving the termination of parental rights. *Id.* at 1275. In such cases, counsel representing a parent on a first appeal from a decree involuntarily terminating parental rights may petition for leave to withdraw representation and submit an *Anders* brief. *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). Counsel must do the following:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;
>
> (2) furnish a copy of the [*Anders*] brief to the [appellant]; and
>
> (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy [of] the court's attention.

*Commonwealth v. Cartrette*, 3 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

We also review counsel's *Anders* brief for compliance with the requirements under *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1)

provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361. Additionally, this Court must conduct an independent review of the record to discern if there are any non-frivolous issues that counsel may have, intentionally or mistakenly, omitted or misstated. **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel has satisfied the first requirement by filing a petition to withdraw. In the petition, he asserts that he has made a conscientious review of the record and determined the appeal would be frivolous. Counsel also satisfies the second requirement by filing an **Anders** brief that complies with the **Santiago** requirement. As to the third requirement, counsel attaches to his petition a copy of the letter sent to Father advising him of his rights and enclosing a copy of the **Anders** brief. We, thus, find that counsel has complied with the **Anders** requirements and proceed to a review of the merits.[3]

_____

[3] Our standard of review is well-settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental

*(Footnote Continued Next Page)*

## III.

In his ***Anders*** brief, counsel presents two issues:

1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that [OCY] established sufficient grounds for termination under 23 Pa.C.S.A. § 2511?

2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that termination of [Father's] parental rights was in [Child's] best interests under Section 2511(b)?

***Ander's*** Brief at 7.

Section 2511 of the Adoption Act governs the involuntary termination of parental rights and requires a bifurcated analysis:

> ... Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

---

> rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

***In re M.M.***, 106 A.3d 114, 117 (Pa. Super. 2014) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***Id.*** (citations omitted).

*In re Adoption of B.G.S.*, 240 A.3d 658, 662-63 (Pa. Super. 2020) (citation omitted); *see also In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm).

As noted, the orphans' court terminated Father's parental rights under Section 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act. We analyze the decision to terminate Father's parent rights under Subsections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights.

*In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). While the statute focuses on the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Moreover, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty ... requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations, internal quotation marks, and internal paragraph breaks omitted).

Furthermore, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to

maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted).

In terminating Father's parental rights, the orphans' court emphasized that he showed no progress throughout the year-plus proceedings of providing consistently for the physical and emotional needs of Child.

> In the instant case, the record demonstrates by clear and convincing evidence that termination of [Father's] parental rights was proper, as [Father] found himself in no better position nearly fifteen (15) months later to care for [Child] than he was at the time of the removal. Arguably, [Father's] ability to care for her declined over the life of the case, which began when he was in a rehabilitation facility for drugs and alcohol and ended with him describing himself to the caseworker as "high as [f---]."
>
> [Father] was provided a treatment plan at the inception of the case, the terms of which were repeatedly made clear to him by his caseworker and the Court at each Permanency Review Hearing. [Father's] treatment plan required him to follow through with mental health and drug and alcohol treatment, submit to random urinalysis screening, refrain from criminal activity, and obtain safe and stable housing. [Father] demonstrated minimal compliance with the treatment plan at each review period. Due to [Father's] level of compliance, the Court added a concurrent goal of adoption at the December 9, 2020 Permanency Hearing, making it clear to [Father] under no uncertain terms that a lack of substantial progress during the next review period would result in a goal change to adoption. Despite this, [Father] continued to make a minimal effort, at best, in engaging with his caseworker and in the treatment plan.
>
> The testimony at the IVT Trial was established during the fifteen (15) months following [Child's] removal, neither parent performed any parental duties on her behalf. *See* 23 Pa.C.S.A. § 2511

- 10 -

(a)(1). Further, neither [Father], nor Mother, had any contact with [Child] for the six (6) months preceding the IVT Trial due to their lack of compliance. [*See* N.T., 6/4/21,] at 9.

Orphans' Court Opinion, 8/17/21, at 9.

The record supports the orphans' court's determination that there is clear and convincing evidence that termination is appropriate under Section 2511(a)(1). At the termination hearing, the caseworker's testimony showed that Father failed to perform parental duties for a period of at least six months before the hearing because he ignored drug testing requirements. *See* N.T., 6/4/21, at 9. As the caseworker confirmed, Father was present with counsel for all the permanency review hearings and informed of the treatment plan. *Id*. at 10. Despite this being the case, he willingly attended no drug screenings because he felt he did not need to because he was "dropping for parole," presumably meaning he was already being drug tested as part of his supervision. *Id*. at 12-13. In February 2021, however, the caseworker conducted a home visit and observed Father under the influence, which he confirmed, stating that he was "high as f---." *Id*. at 14.

As a result, the orphans' court had clear and convincing evidence that Father has "evidenced a settled purpose of relinquishing [his] parental claim to [Child]" and "has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate

J-A02039-22

indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

If the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  In reviewing the evidence in support of termination under subsection (b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability....  [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (most citations and internal quotation marks omitted; brackets added and in original).

Subsection (b) does not mandate a formal bonding evaluation.  *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).  When evaluating a parental bond, "the court is not required to use expert testimony.  Social workers and caseworkers can offer evaluations as well." *Id.* (citations omitted).  Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances ... where direct observation of the interaction between the parent and the child is not necessary and may even

- 12 -

be detrimental to the child." ***In re K.Z.S.***, 946 A.2d at 762. "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***Id.***

At the termination hearing, the caseworker testified that Child's needs were being met in her pre-adoptive home and that she had a strong bond with them. ***See*** N.T., 6/4/21, at 7. Moreover, she testified that Child, being adopted by her foster family, would "outweigh any detriment" to the termination of her bonds to Father. ***Id***. at 9. Our review of the record supports this assessment, as there is no evidence of any bond with Father. Thus, the record supports the orphans' court's conclusion that Child's developmental, physical and emotional needs are best met by terminating Father's parental rights. Thus, because the orphans' court's conclusion is supported by competent record evidence, we discern no error or abuse of discretion in its determination of subsection (b).

Finally, our independent examination of the certified record did not reveal any additional, nonfrivolous issues overlooked by counsel, ***see Yorgey***, ***supra***, and we agree with Father's counsel that this appeal is frivolous. As a result, we grant counsel's petition to withdraw from representation and affirm the decree terminating his parental rights to Child under Section 2511.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/14/2022