J-A13043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1615 MDA 2022 |

Appeal from the Order Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): 059-ADOPT-2022,
060-ADOPT-2022, CP-21-DP-0000019-2021,
CP-21-DP-0000020-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1616 MDA 2022 |

Appeal from the Order Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000020-2021

| | | |
|---|---|---|
| IN RE: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.M.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1621 MDA 2022 |

Appeal from the Decree Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 060-ADOPT-2022

J-A13043-23

Appeal from the Decree Entered November 3, 2022
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  059-ADOPT-2022

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 08, 2023**

Appellant, K.R. ("Mother"), appeals from the November 3, 2022, decrees that involuntarily terminated her parental rights to her sons, K.S., born in February 2020, and C.S., born in January 2014 (collectively, "Children").[1]  Mother also appeals from the November 3, 2022 orders changing Children's permanency goals from reunification to adoption.   In addition, Mother's appointed counsel, R. H. Hawn, Jr., Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009).  After careful review, we grant Counsel's petition

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On the same date, the court also terminated the parental rights of C.S. ("Father").  Father timely filed appeals which we dispose of by separate memorandum.

- 2 -

to withdraw, affirm the termination decrees, and dismiss the appeals from the goal change orders as moot.

We glean the following factual and procedural history of this matter from the certified record. Cumberland County Children and Youth Services ("CYS") became involved with the family in December 2020 after receiving a referral that C.S. had 22 unexcused absences from school. Notes of Testimony ("N.T."), 11/1/2022, at 39, 86-87. On December 31, 2020, Mother obtained a temporary protection from abuse ("PFA") order against Father on behalf of her and Children. *See* CYS Exhibit 10.

Furthermore, in January 2021, Mother requested that C.S. be admitted to Hershey Medical Center due to behavioral and mental health concerns. *See* CYS Exhibit 3-4. After being assessed, C.S. was admitted to Southwood Psychiatric Hospital from January 14, 2021, to January 20, 2021. *Id*. Child was diagnosed with oppositional defiant disorder and was recommended for trauma therapy and family-based services. *Id*. Also during this time, CYS received another referral alleging that Father had violated the PFA order,[2] that Mother was improperly supervising K.S., then eleven months old, and C.S. had behavioral issues. N.T. at 41.

---

[2] On February 3, 2021, Mother obtained a final PFA order on behalf of herself only. *See* CYS Exhibit 10.

On February 25, 2021, CYS filed dependency petitions. *See* CYS Exhibit 3-4. Thereafter, on March 17, 2021, Mother brought C.S. to Holy Spirit Hospital for psychiatric treatment. *Id*. However, she did not stay with C.S., and after the hospital could not establish contact with her on March 18, it contacted the police to perform a welfare check on her and K.S., who remained in her care.[3] *Id*. Around 1:00 a.m. on March 20, police found Mother sleeping in her running car with K.S., who had just turned one year old. *Id.*; *see also* N.T. at 41. Thereafter, due to the concerns of domestic violence in the home as well as Mother's own mental health, CYS obtained protective custody of Children on March 19, 2021. *Id.* 41-42, 87. On April 6, 2021, following a hearing, the orphans' court adjudicated Children dependent. *Id.* at 41.

In furtherance of Children's goal of reunification, Mother was required to perform the following objectives that remained the same through Children's dependency: (1) maintain adequate housing (2) submit to a psychiatric evaluation and follow any recommendations; (3) attend parenting training; (4) attend visitation with Children; (5) ensure Children's medical, dental, and educational needs are met; and (6) cooperate with CYS. *Id.* at 40-55.

Mother made minimal progress in completing her goals. Approximately one year after the orphans' court adjudicated Children dependent, in March

---

[3] Two inpatient beds at the hospital became available during this time, however, because the hospital could not reach Mother, C.S. was not admitted. *See* CYS Exhibit 3-4.

2022, Mother departed Pennsylvania for Florida. *Id.* at 44-46. By the date of the termination hearing in November 2022, Mother had moved to South Carlina and CYS did not know if Mother had adequate housing as she refused to provide CYS with her new address. *Id.* at 44-46, 149-150. Mother did complete a Family Assessment for Service and Treatment ("FAST") evaluation in February 2021, but she did not complete the recommendations made from the evaluation; namely, that she complete parenting education and a psychiatric evaluation. *Id.* at 47-48. Finally, prior to leaving Pennsylvania, Mother participated in supervised visits at Alternative Behavior Consultants ("ABC") or visits in the community supervised by ABC. *Id.* at 57-58. However, once she departed Pennsylvania, her visitation was solely virtual. *Id.* at 58.

On July 19, 2022, CYS filed petitions to change Children's permanency goals from reunification to adoption. Thereafter, on October 11, 2022, CYS filed petitions for the involuntary termination of Mother's parental rights to Children pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b). The orphans' court conducted a combined evidentiary hearing on November 1, 2022, at which time Children were eight and two years old, respectively. Children were represented by a guardian *ad litem* ("GAL") and separate legal counsel.

CYS presented the testimony of Trevor Donovan, outpatient health therapist for C.S. at Laurel Life; Kelly Felix, foster care case manager at

Merakey Foster Care; J.R., pre-adoptive foster parent of Children; and Ashley Vilkas, CYS caseworker. Mother was represented by Counsel and testified on her own behalf.

By decrees entered on November 3, 2022, the orphans' court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S.A § 2511(a) and (b). In addition, by orders entered the same date, the court changed Children's permanency goals to adoption. Mother, through Counsel, timely filed notices of appeal, and, in lieu of Rule 1925(b) statements, Counsel filed statements of intent to withdraw.[4] *See* Pa.R.A.P. 1925(c)(4); *see also Interest of J.T.*, 983 A.2d 771 (Pa. Super. 2009) (determining that *Anders* procedure set forth in Rule 1925(c)(4) is proper in termination of parental rights case). This Court consolidated Mother's appeals *sua sponte* on December 7, 2022. The orphans' court filed a Rule 1925(a) opinion on January 24, 2023.

Counsel filed an application to withdraw pursuant to *Anders* along with a brief expressing his belief that Mother's claims are frivolous on March 10, 2023. This Court has extended the *Anders* procedures to appeals taken from decrees terminating parental rights involuntarily. *See In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa. Super. 2020) (citing *In re V.E.*, 611 A.2d

---

[4] In lieu of a brief, the GAL and Children's legal counsel submitted letters in support of Counsel's petition to withdraw.

1267, 1275 (Pa. Super. 1992)).  Accordingly, we will begin our review by considering Counsel's petition to withdraw and the accompanying brief.  *See B.G.S.*, *supra* at 661 ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to withdraw pursuant to *Anders*, counsel must:  (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention.  *Id*.  By way of confirming that client notification has taken place, our precedent requires that counsel provide this Court with a copy of the letter advising the appellant of his or her rights in conformity with *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).  *See B.G.S.*, *supra* at 661.

Our Supreme Court has also set forth substantive requirements for counsel's *Anders* brief, which must:  (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  *Id*. (citing *Santiago*, 602 Pa. at 178-179, 978 A.2d at 361).  Thus, a compliant *Anders* brief should

"articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." *Id*.

Instantly, Counsel filed a petition to withdraw stating that, after conscientiously reviewing the record, he believes Mother's appeal is frivolous. Counsel also attached the letter he sent to Mother pursuant to *Millisock*, along with the petition and *Anders* brief, advising of her right to retain new counsel or proceed *pro se* to pursue her appeal.[5] Counsel also filed an *Anders* brief which includes a summary of the procedural history and facts of the case with citations to the record, discussion of issues that could arguably support Mother's appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Accordingly, we conclude that Counsel has complied with the technical requirements of *Anders* and *Santiago*.

We next must proceed to "'conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.'" *B.G.S.*, *supra* at 662 (quoting *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015)).

We begin this assessment with the issues enumerated by Counsel:

1. Did the trial court abuse its discretion or commit errors of law when it found that the children's permanent placement goals of reunification were neither appropriate, nor feasible and ordered goal changes to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S.[A.] § 6351(f)?

_____

[5] Mother has not retained new counsel or proceeded *pro se* in this Court.

2. After finding that sufficient grounds existed for termination of [M]other's parental rights, did the trial court abuse its discretion or commit errors of law by failing to primarily consider the children's developmental, physical, and emotional needs and welfare, or by failing to regard the prohibition against termination based solely on environmental conditions beyond [Mother's] control, thus contravening section 2511(b) of the Adoption Act, 23 Pa.C.S.[A.] § 2511(b)?

*Anders* Brief at 4.[6]

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and

_____

[6] Counsel's enumerated issues do not include a challenge to Section 2511(a). However, as stated *supra*, we are required to conduct an independent review of the record to determine if there are *any* non-frivolous issues. *B.G.S.*, *supra* at 662.

- 9 -

permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

**Interest of M.E.**, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed at statute by 23 Pa.C.S.A. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to Section 2511(a)(1)-(11). **M.E.**, **supra** at 830. If the orphans' court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition under Section 2511(b), which focuses primarily upon the child's developmental, physical, and emotional needs and welfare. **Id.** at 830 (citing **In re T.S.M.**, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013)); **see also** 23 Pa.C.S.A. § 2511(b). This Court "need only agree with any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." **T.S.M.**, **supra** at 628, 267 (citing **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

In the case *sub judice*, the orphans' court terminated Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

Instantly, we will analyze the court's termination decree pursuant to Section 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018).

Furthermore, termination pursuant to Section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal or placement of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). This Court has acknowledged:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*Id*. at 11-12 (emphasis in original; internal citations omitted).

Finally, this Court has explained that,

> while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

- 12 -

In concluding that CYS satisfied Section 2511(a)(8), the court emphasized Mother's noncompliance, as follows:

> Rather than working on the permanency plan goals set out for her to achieve the goal of reunification, Mother refused to accept the services available to her and was discharged for lack of attendance or she simply refused to avail herself to certain court ordered services/recommendations. While Mother identified a valid concern of potential future domestic violence by [Children's] Father, her decision to move out of Pennsylvania was done without the assistance of any domestic violence service provider and over the opposition of the court. As anticipated, Mother's contact with [CYS] and [Children] was severely limited after she left Pennsylvania. Only virtual visitation was able to be scheduled and Mother continued on her path of non-compliance by refusing to inform [CYS] where she was residing and never demonstrating that she had completed a psychiatric evaluation or parenting education. [Children] have been out of [Mother's] care for well over a year and a half and are no closer to being reunified with Mother than the day they were placed and not for [CYS's] lack of trying to assist Mother with reunification. Mother has been unwilling or unable to take the steps necessary to remedy the reasons for [Children's] placement into [CYS's] legal and physical custody.

Orphans' Court Opinion, 1/24/2023, at 8-9 (unpaginated) (footnote omitted).

The record supports the orphans' court's findings. Initially, it is undisputed that Children have been removed from Mother's care for the requisite twelve months. Turning to the second prong of Section 2511(a)(8), it is clear from the evidence presented that Mother has made minimal progress in remedying the conditions that led to Children's placement.

Primarily, Mother never completed a parenting class, and she did not provide proof to CYS that she completed a psychiatric evaluation. N.T. at 47-52. After completing the FAST evaluation in February 2021, it was

recommended that Mother engage in parenting education and that she complete a psychiatric evaluation. *Id.* at 47-48. Accordingly, Mother began the TIPS parenting program through ABC, but she was unsuccessfully discharged due to noncompliance. *Id.* at 48. In March 2022, ABC requested that Mother complete another FAST evaluation because it had been over a year since Mother completed her initial evaluation, but Mother never completed a second evaluation because she relocated to Florida. *Id*.

Additionally, Mother reported that she completed a psychiatric evaluation, but she never provided documentation to CYS. *Id.* at 49, 76. The evaluation was allegedly performed in Florida and CYS contacted the provider to obtain a copy. *Id.* at 50-51. However, when CYS inquired, the provider advised that it did not have a release on file. *Id.* at 51. CYS followed up with Mother, but she never provided the releases. *Id.* at 51-52. Therefore, CYS was not able to confirm that Mother obtained the psychiatric evaluation. *Id*.

Furthermore, CYS did not know if Mother had adequate housing because she left Pennsylvania and refused to provide CYS with her new address. *Id.* at 44-46, 149-150. Mother moved to Florida in March 2022. *Id.* at 44-45. CYS caseworker, Ms. Vilkas, submitted an Interstate Compact on the Placement of Children ("ICPC") referral, but required information from Mother regarding her new home. *Id.* at 45, 72-74. Ms. Vilkas merely needed to know how many bedrooms were in the home and if there were additional persons living in the residence. *Id.* at 77. However, Mother did not provide the

information to CYS despite numerous requests, and before CYS could obtain the necessary information, Mother moved to South Carolina, where she was residing at the time of the hearing. *Id.* at 46, 72-74. Due to the move, CYS was required to submit a second ICPC referral, but Mother refused to provide her residential address, instead only providing a mailing address. *Id.* at 46, 72-74, 163. Therefore, the second ICPC could not be completed either.

Regarding the final prong of Section 2511(a)(8), Ms. Vilkas testified that it is in Children's best interest for Mother's rights to be terminated. *Id.* at 61-62. She further stated that Children "have a stable home environment" with foster parents and "[t]hey are really thriving right now." N.T. at 62. Mr. Donovan, outpatient health therapist for C.S., stated that C.S. initially struggled with expressing his emotions, accepting limitations, and coping with anxiety, but he has made noticeable progress. *Id.* at 9. Mr. Donovan further emphasized that foster parents are involved in C.S.'s treatment and ensure he obtains the services he needs. *Id.* at 10. Conversely, Mother never progressed beyond supervised visitation, and once she left Pennsylvania, only participated in virtual visits. *Id.* at 58. Foster parent, J.R., also noted that C.S. often does not want to talk to Mother during the virtual visits and that K.S. does not recognize her. *Id.* at 23-24.

Based on the foregoing, the orphans' court was well within its discretion to terminate Mother's parental rights under Section 2511(a)(8) because Children had been removed from her care for more than the twelve-month

statutory minimum, the conditions which led to Children's removal continue to exist, and termination would best serve the needs and welfare of Children.

Having determined that there are sufficient grounds for termination pursuant to at least one subsection of 23 Pa.C.S.A. § 2511(a), we now turn to Section 2511(b), which affords "primary consideration" to "the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). In *Interest of K.T.*, 2023 Pa. Lexis 829 (Pa. June 21, 2023), our High Court held:

> a court conducting a Section 2511(b) analysis **must consider more than proof of an adverse or detrimental impact** from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

*Id.* at *54-55 (emphasis added). In addition, the **K.T.** Court held that the "Section 2511(b) inquiry must also include consideration of other important factors." *Id.* at *55. While not inventing an exhaustive list of considerations, the Court explained that the inquiry **must consider and weigh** certain evidence **if it is present in the record**, including, but not limited to,

> the child's need for permanency and the length of time in foster care consistent with 42 Pa.C.S.[A.] § 6351(f)(9); whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* (footnote omitted); *see also id.* at n.28 (emphasis in original).

The evaluation of a child's bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, *supra* at 629, 267. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. Specifically, we have observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Primarily, other than her own self-serving testimony, no real evidence was presented that Mother and Children, who were eight years old and two years old at the time of the hearing, shared a bond. Furthermore, as referenced *supra*, Mother only participated in virtual visits starting in March 2022, after she departed Pennsylvania, C.S. did not want to talk to Mother during these visits, and K.S. did not recognize Mother. N.T. at 23-24, 58. Therefore, based on this lack of evidence, it is reasonable to infer that Mother and Children did not share a parent-child bond. *See K.Z.S.*, *supra* at 762-763.

In determining that termination of Mother's parental rights favors Children's needs and welfare under Section 2511(b), the orphans' court stated the following.

> [Children] are finally in a stable environment with proper parenting, with people who are caring, dependable, and dedicated to the promotion of their development. Unlike with Mother, who is unable to provide [Children] with a stable home environment, [Children] are now in a home that provides them the consistent nurturing they need to be healthy and safe with all of their developmental needs being met.

Orphans' Court Opinion, 1/24/2023, at 11-12 (unpaginated).

We discern no abuse of discretion. As related **supra**, Ms. Vilkas and Mr. Donovan testified to the stability and progress Children have made with their pre-adoptive foster parents. Ms. Felix, foster care case manager, also testified that Children have progressed immensely while with foster parents.

> Q: Since they first started with the foster parents until now, have you seen any changes in [Children], any progress being made by them?
>
> A: Yes. [K.S.] has come a really long way with his speech. He is happy. He plays. He interacts with people. C.S. isn't as angry as what he used to be. He's making relationships. He's making friends in the community, at school. They both seem like they have come quite a long way, yes.
>
> Q: You said K.S. has come a long way with his speech. Is he receiving any specific services for that?
>
> A: He gets speech therapy, yes.
>
> . . .
>
> Q: Is he receiving any other like occupational therapy?
>
> A: Occupational therapy, yes.

- 18 -

Q: What is that to address?

A: I think it's fine motor skills.

Q: Okay. [Foster Parents] have been seeing that that occurs regularly?

A: Yes.

Q: Are [Children] up to date medically and dentally?

A: Yes.

. . .

Q: How would you describe the dynamic in the home between [foster parents] and [Children]?

A: They are a very loving family. They are a family. It's nice to be able to go in and see [Children] in their relationship with [foster parents].

*Id.* at 14-15. Accordingly, the orphans' court did not abuse its discretion in determining that termination best serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

With respect to Mother's appeals from the goal change orders, given our disposition affirming the decrees, they are moot. Therefore, we do not review them. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Based on our independent analysis, we agree with Counsel that the appeal from the decrees terminating Mother's parental rights pursuant to

Section 2511(a)(8) and (b) is wholly frivolous and our review of the record does not reveal any overlooked non-frivolous issues.

Counsel's petition to withdraw granted. Decrees affirmed. Appeals from goal change orders dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/08/2023