2020 PA Super 243

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.G.S., A/K/A S.S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., FATHER | : | No. 829 EDA 2020 |

Appeal from the Decree Entered January 22, 2020
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: No. 2019-A0058

BEFORE: BOWES, J., STABILE, J., and COLINS, J.[*]

OPINION BY STABILE, J.: **FILED OCTOBER 07, 2020**

S.S. ("Father") appeals from the decree entered on January 22, 2020, which terminated involuntarily his parental right to his daughter, B.G.S., a/k/a S.S.S. ("Child"), born in January 2019.[1] In addition, Father's counsel has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). After careful review, we deny the petition to withdraw and remand for counsel to file an advocate's brief.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, S.S. ("Mother"), executed a consent to Child's adoption, and the orphans' court entered a separate decree confirming her consent and terminating her parental rights. Mother did not file an appeal.

We summarize the relevant facts and procedural history of this matter as follows. Father and Mother dated from "the beginning of 2017" until April 2018, at which point Father ended their relationship. N.T., 1/22/20, at 7-14. Mother discovered that she was pregnant after her relationship with Father ended and it is undisputed that she did not inform him of her pregnancy.[2] N.T., 11/25/19, at 14. After Child's birth, Mother decided to place her for adoption through Transitions Adoption Agency ("the Agency"). *Id.* at 8-10. Mother explained at that time that she suffered a sexual assault and believed her unidentified assailant to be Child's father.[3] *Id.* at 14-15, 65-67. The Agency placed Child with her prospective adoptive parents, D.M. and T.M., in February 2019, where she has remained to the present day. *Id.* at 11, 68-69, 78.

Subsequently, Father and Mother reestablished contact in March 2019. N.T., 1/22/20, at 15, 57, 60. According to Father, Mother was visiting his home in approximately April 2019 when he noticed that the background image

_____

[2] Father acknowledged that he ignored several phone calls from Mother in approximately April 2018 but there is no indication that she was calling to inform him of her pregnancy. N.T., 1/22/20, at 11, 50-51.

[3] Mother's subsequent testimony may cast doubt on her explanation that she believed her assailant to be Child's father, as she stated on two occasions that she should not have placed Child for adoption without informing Father first. *See* N.T., 11/25/19, at 10-11 ("I made my decision based off of myself, but I do not agree with the fact that I made it without letting him know. . . . I don't agree with it being as though I made the decision without notifying him[.]").

- 2 -

on her cellphone was a picture of Child, which prompted him to begin asking questions. *Id.* at 17-18, 21-24, 61. Mother explained that Child was her child, but did not disclose that Child may be Father's child, and "didn't really want to talk about it." *Id.* at 18. About two weeks later, in April or May 2019, Mother informed Father that he may be Child's father. *Id.* at 19-21, 38-39, 56, 61, 70-72. She also met with the Agency's director and informed her of Father's existence and his possible paternity of Child.[4, 5] *Id.* at 70-71.

Meanwhile, Mother provided Father with the name of the Agency, which he used to look up its phone number. *Id.* at 22-23. Father maintained that he called the Agency the day after he learned that he may be Child's father, but that his call went to voicemail and he did not leave a message. *Id.* at 25, 61. In addition, he spoke with family members, including his stepfather, who provided him with the phone number for an attorney. *Id.* at 27-28, 34, 62. Father spoke with the attorney, but she advised him that she did not handle his type of case and "sent [him] a number of a person." *Id.* at 26-27, 45, 53-

---

[4] A paternity test later confirmed that Father is Child's father. N.T., 1/22/20, at 48-49, 98.

[5] While Father testified that he learned of his possible paternity in early May 2019, the director testified that her meeting with Mother occurred on April 4, 2019, and that Father would have known of his possible paternity by at least that date based on Mother's statements. N.T., 1/22/20, at 21, 39, 61, 70-72.

54, 62. Father then attempted to call the Agency a second time on August 26, 2019, and spoke to the director.[6] *Id.* at 25-26, 42-43, 61, 74-75.

On September 9, 2019, the Agency filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court held a hearing on November 25, 2019, and January 22, 2020. At the conclusion of the hearing, the court placed its findings of fact on the record and announced that it would terminate Father's rights. It entered a decree memorializing its decision that same day. Father's counsel timely filed a notice of appeal on his behalf on February 21, 2020, along with a statement of intent to file an *Anders* brief in lieu of a concise statement of errors complained of on appeal. Counsel filed a petition to withdraw and *Anders* brief in this Court on May 22, 2020.[7]

We begin by addressing the petition to withdraw and *Anders* brief. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). This Court extended the *Anders* procedure to appeals from decrees terminating

---

[6] Father's account of the call was that the director refused to disclose any information regarding Child. N.T., 1/22/20, at 43-45. The director's account was that Father asked various hypothetical questions and then hung up on her. *Id.* at 75-77.

[7] Counsel also filed a petition to withdraw in the orphans' court on February 21, 2020. It does not appear that the court acted on counsel's petition.

parental rights involuntarily in **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992).

To withdraw pursuant to **Anders**, counsel must comply with the following

requirements:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en*

*banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super.

2009)).  Counsel must provide this Court with a copy of the letter advising the

appellant of his or her rights.  **Commonwealth v. Millisock**, 873 A.2d 748,

752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements

for **Anders** briefs:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

In the instant matter, counsel filed a petition to withdraw and **_Anders_** brief. Counsel's brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support Father's appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Counsel also provided this Court with a copy of her letter to Father, advising him of his right to obtain new counsel or represent himself.[8] Therefore, counsel has complied substantially with the requirements of **_Anders_** and **_Santiago_**, and we may proceed to review the issues outlined in her brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **_Commonwealth v. Flowers_**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **_Anders_** brief identifies the following issues for our review:

1. Whether an application to withdraw as counsel should be granted where counsel has investigated the possible grounds for appeal and finds that there was no legal basis for an appeal and that an appeal would be frivolous[?]

2. Whether the [orphans' c]ourt committed an error of law and/or abuse of discretion when it held that [the Agency] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) and [§] 2511(a)(6) because [Father] did not know nor should he have known that he could be the father of the child until approximately two and a half months after the child's birth, and once he did, he made diligent efforts towards the assumption of parental responsibilities[?]

---

[8] Counsel indicated in her letter that she had enclosed a copy of her petition to withdraw and brief.

3. Whether the [orphans' c]ourt committed an error of law and/or abuse of discretion when it terminated [Father's] parental rights pursuant to 23 Pa.C.S.A. [§] 2511(b) on the basis that the developmental, physical, and emotional welfare of the child was best served by termination of [Father's] rights when [Father] did not know nor should he have known that he could be the father of the child until approximately two and a half months after the child's birth, and once he did, he made diligent efforts towards the assumption of parental responsibilities[?]

*Anders* Brief at 8.

These issues are interrelated, so we will address them together. Our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (6), and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > \*\*\*
> >
> > (6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.
> >
> > \*\*\*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

*** 

23 Pa.C.S.A. § 2511(a)(1), (6), (b).

Our review of the record and the findings of the orphans' court reveals that Father's appeal is not wholly frivolous as his counsel indicates. Thus, we must remand this matter for counsel to file an advocate's brief on his behalf. *See In re M.C.F.*, 230 A.3d 1217, 1220 (Pa. Super. 2020) (denying the petition to withdraw filed by the father's counsel, explaining that the father's appeal was "not so lacking in merit that counsel should be permitted to withdraw," and remanding for counsel to submit an advocate's brief).

The orphans' court did not issue a separate, written opinion, but instead issued a statement relying on the findings of fact that it placed on the record at the conclusion of the hearing on January 22, 2020. The court explained its decision to terminate Father's parental rights as follows:

> In this case, the essential facts are not really in dispute. The birth father acknowledges that he has not seen the child, excluding a video chat that occurred after the date of the filing of the petition.[9] He also acknowledges in terms of a timeline that he became aware that [Mother] had a child in April of 2019, that he had a long-term physical relationship with [Mother] throughout 2017 and until April of 2018, that by early May of 2019 he was aware not only that [Mother] had had a child but became aware that he could be the father of that child.

---

[9] The orphans' court appointed counsel for Father after the start of the hearing on November 25, 2019. Counsel assisted Father in arranging a FaceTime call with Child. N.T., 1/22/20, at 47-48.

- 9 -

[Father's] testimony was clear and candid and honest, and I credit his testimony and his candor with the Court.

I want to express compassion and understanding for his lack of information and lack of knowledge about how to assert his interests in this matter. Nevertheless, he did fail to assert his interests from May of 2019 until at least August of 2019 -- August 26th of 2019. And in all of that time, from May of 2019 up until the previous hearing before this court in November of 2019, he provided no financial support for the child, no physical or concrete support in the form of food or clothing or diapers or any other physical objects for the child's benefit, no toys, gifts, or cards for the child, and made very little effort to contact the [A]gency or find out how he could contact the child or how he could -- nor did he come to court or speak to attorneys to find out if he could come to court and seek custody rights or visitation rights or otherwise assert any rights or interests in the child.

This is an unfortunate case, because the testimony was undisputed that [Father] was not aware of the child's birth at the time of her birth or at the time of the placement with the [A]gency by [Mother]. The [A]gency was not aware of [Father's] possible involvement or identity at the time of the child's placement. Nevertheless, certainly by April and May of 2019, [Father] had information from which he could have taken more action if he have had [*sic*] the resources in order to assert his rights. And as the courts have said, parenting a child requires resisting and not giving way to all the obstacles placed in your paths.

\*\*\*

In this case, the parent's explanation for his conduct is, in essence, that he sought assistance from adults and family figures in his life, his aunt, his stepfather, and his sister, in particular, and that he did seek to reach out to an attorney who proved not to be particularly helpful to him. But beyond those contacts, he didn't affirmatively assert with the agency or with anyone in a position to help him a request for visits, a request for information about how the child was doing, a request to have FaceTime, until he had a lawyer appointed by this Court, and that didn't occur until January of 2020.

I credit [Father] that he is sincere in his desire not to have his rights terminated, and he's sincere to have a relationship with his child, and there is nothing in his testimony that is not to his

credit except for the clarity, which he candidly concedes, that he has not provided for this child in any material way or any emotional way throughout her life and nor had any contact with her.

. . . . The birth father knew, or had reason to know, of the child's birth not only before her birth due to the long-term physical relationship he had with [Mother] but also certainly no later than early May of 2019 he knew, or had reason to know, of the child's birth. . . .

The standard may seem like a high bar to meet, but parenting is an important, a sacred, and a substantial commitment between people, and that standard has not been met in this case, the standard of acting as a parent to this child, particularly during those four months of May through September of 2019.

For all of the foregoing reasons, the Court finds that the agency has met its burden of proof by clear and convincing evidence establishing grounds for termination of parental rights under Section 2511(a) (1) and Section 2511(a)(6) of the statute with respect to this birth father.

N.T., 1/22/20, at 109-114.

Initially, the decision of the orphans' court to terminate Father's parental rights pursuant to Section 2511(a)(1) may be contrary to the record and to its own findings of fact. The essence of our Courts' case law regarding Section 2511(a)(1) is that a parent must make reasonable, good faith efforts to maintain a relationship with his or her child, and that the failure to do so "for a period of at least six months immediately preceding the filing of the petition" will provide grounds for the termination of parental rights. 23 Pa.C.S.A. § 2511(a)(1). As this Court has emphasized, a parent does not perform his or her parental duties by displaying a merely passive interest in the development of a child. ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal*

- 11 -

*denied*, 872 A.2d 1200 (Pa. 2005) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**Id.** (citations omitted).

Case law also provides, however, that a parent need not "perform the impossible." **Id.** at 857. Even when a parent has no contact with a child for a period in excess of six months, our law does not require termination of his or her parental rights where that parent faced obstacles preventing contact with the child, so long as the parent has made reasonable, good faith efforts to resist those obstacles. **See In re Adoption of C.J.A.**, 204 A.3d 496, 504 (Pa. Super. 2019) (affirming the order denying involuntary termination of the father's parental rights, where, "[w]hile it [was] true that [the f]ather did not actually succeed in making contact with [his c]hild, he strove to overcome the obstacles that [the m]other placed in his path.").

In this case, it was undisputed that Father had no contact with Mother from April 2018 until March 2019 and that the Agency filed its termination petition on September 9, 2019. As quoted above, the orphans' court found

- 12 -

that Father first learned that Mother had a child, and that he may be the child's father, in April or May 2019. N.T., 1/22/20, at 109-114. Because our law does not require that a parent "perform the impossible," it may have been improper for the court to hold Father responsible for failing to perform parental duties when he did not know, and may not have had any reason to know, of Child's existence.[10] Indeed, depending on the exact date, Father would have had approximately four or five months to perform parental duties from the time he learned of Child's existence until the Agency filed its termination petition, well below the "at least six months" that the Adoption Act requires. 23 Pa.C.S.A. § 2511(a)(1); **see also** N.T., 1/22/20, at 110 (the orphans' court explaining that Father "did fail to assert his interests from May of 2019 until at least August of 2019 -- August 26th of 2019.").

Also troubling is the assertion by the orphans' court that Father "could have taken more action if he have had [*sic*] the resources in order to assert his rights." N.T., 1/22/20, at 111. To the extent the court found that Father's lack of resources prevented him from taking action to perform his parental duties, his failure may have been excusable. **See In re Adoption of C.M.W.**, 603 A.2d 622, 625-26 (Pa. Super. 1992) (quoting **In re Adoption of B.D.S.**,

---

[10] While the orphans' court found that Father had reason to know of Child's birth based solely on the fact that he and Mother had engaged in a "long-term physical relationship," this finding was highly questionable, especially in light of Father's testimony that Mother reported using contraception during their relationship. N.T., 1/22/20, at 37, 56-57, 113.

- 13 -

431 A.2d 203, 207 (Pa. 1981)) ("'[A] parent's performance must be measured in light of what would be expected of an individual in circumstances in which the parent under examination finds himself.'"). Significantly, the Adoption Act forbids termination of parental rights "solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S.A. § 2511(b).

Next, the decision of the orphans' court to terminate Father's parental rights pursuant to Section 2511(a)(6) may have been contrary to the plain language of the Adoption Act. As quoted above, Section 2511(a)(6) applies solely "[i]n the case of a newborn child." 23 Pa.C.S.A. § 2511(6). The statute defines a "[n]ewborn child" as one "who is six months of age or younger at the time of the filing of any petition pursuant to Chapter 25 (relating to proceedings prior to petition to adopt)." 23 Pa.C.S.A. § 2102. In this matter, the Agency filed its petition to terminate Father's parental rights on September 9, 2019, when Child was approximately eight months old, and not a "newborn child." *See In re Adoption of M.R.B.*, 25 A.3d 1247, 1254 (Pa. Super. 2011) ("If [the agency] had delayed filing the petition . . . the agency would have been precluded from invoking § 2511(a)(6) because [the child] would no longer satisfy the statutory definition of a newborn child.").[11]

---

[11] The Agency and Child's prospective adoptive parents assert in their joint brief that Child meets the definition of a "newborn child" because the Agency filed petitions to confirm Mother's consent, and to terminate the parental

Section 2511(a)(6) also requires that a parent must "know[] or [have] reason to know of the child's birth[.]" 23 Pa.C.S.A. § 2511(a)(6). To the extent the statute requires that a parent must know or have reason to know of a child's birth at the time it occurs, it was undisputed that Mother did not inform Father of her pregnancy or of Child's birth until months afterward. **See** N.T., 1/22/20, at 110 (the orphans' court explaining, "This is an unfortunate case, because the testimony was undisputed that [Father] was not aware of the child's birth at the time of her birth or at the time of the placement with the agency by [Mother].").[12]

Based on the foregoing discussion, we conclude that Father's appeal is "not so lacking in merit" that we may grant his counsel's petition to withdraw and that we must remand for counsel to file an advocate's brief. **See M.C.F.**, 230 A.3d at 1220 ("While ultimately, [the f]ather may not be entitled to any relief, we cannot say that the appeal is 'wholly frivolous,' *i.e.*, without any basis in law or fact."). Counsel must file an advocate's brief in this Court

---

rights of Mother's unidentified assailant, when Child was still six months old or younger. **See** Appellees' Brief at 19 n.4 ("Petitions for Confirmation of Consent and to Involuntarily Terminate [the assailant's] rights under Chapter 25 were filed on April 17, 2019 and July 8, 2019, and therefore, [Child] is a newborn child.").

[12] It appears the orphans' court concluded that a parent need not know or have reason to know of a child's birth at the time it occurs, but must merely know or have reason to know by the time the four-month period begins to run. **See** N.T., 1/22/20, at 113 (the orphans' court stating, "The birth father . . . certainly no later than early May of 2019 [] knew, or had reason to know, of the child's birth. . . .").

- 15 -

within thirty days of the date of this decision, after which the Agency will have thirty days to file a supplemental response brief, if it so chooses.

Petition to withdraw denied. Case remanded for the filing of additional briefs consistent with this opinion. Jurisdiction retained.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/7/2020*