J-S35003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.A.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: H.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 702 MDA 2023 |

Appeal from the Decree Entered May 5, 2023
In the Court of Common Pleas of Snyder County
Civil Division at No(s):  OC-0039-2022

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:               **FILED DECEMBER 01, 2023**

Appellant, H.P. ("Mother"), appeals from the May 5, 2023 decree entered in the Court of Common Pleas of Snyder County involuntarily terminating her parental rights to her son, J.A.P. ("Child"), born in August 2013. In addition, Mother's appointed counsel, Michael C. O'Donnell, Esquire ("Counsel"), has filed a petition to withdraw and accompanying brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we grant Counsel's petition to withdraw and affirm the termination decree.

This appeal arises from the petition for involuntary termination of Mother's parental rights filed by D.A.M. ("Father") and his wife J.C.M.

_____

[*] Retired Senior Judge assigned to the Superior Court.

("Stepmother") (collectively, "Appellees"). Mother and Father never married but resided together following Child's birth. *See* N.T., 5/5/2023, at 37. In the fall of 2015, they separated. *See id.* at 36-37. Father testified that he left Mother because she "caught some charges, got in some lawful trouble. . . ." *Id.* at 37. Child has lived with Father ever since, and there is no evidence that Mother has had contact with Child since Father left Mother. *See id.* at 36.

Father and Stepmother became romantically involved around 2016. *See id.* at 6-7. Appellees are now married and have been together for the last seven years, since Child was approximately two years old. *See id.* Stepmother has been intimately involved in the care of Child. *See id.* at 7-8, 21-22.

Thereafter, in 2017, the Mifflin County Court of Common Pleas awarded Father primary physical custody and Mother partial physical custody upon agreement by the parties.[1] *See id.* at 34-35. Despite having a right to partial physical custody of Child, Mother made no effort to exercise that right. *See id.* at 27.

On May 23, 2022, Appellees filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A § 2511(a)(1) and (b), a petition for adoption, and a petition to appoint counsel for Child.

---

[1] It is unclear from the record who initiated the custody action in the Mifflin County Court of Common Pleas, but Father testified that when he and Mother separated in 2015, they were living together in Reedsville, Pennsylvania. *See* N.T., 5/5/2023, at 37.

On May 27, 2022, the orphans' court appointed Brian Ulmer, Esquire, as counsel for Child.[2]

At the hearing on May 5, 2023, Appellees testified on their own behalf. Mother testified and adduced additional testimony from Father.

At the conclusion of the hearing, the orphans' court entered a decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Counsel timely filed a notice of appeal and a statement of intent to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). The orphans' court filed a Rule 1925(a) opinion in response.

Upon review of Counsel's **Anders** brief and motion to withdraw, this Court determined that Counsel did not comply with the requirements of **Anders**, **Santiago**, and **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and directed Counsel to file a compliant **Anders** brief or an advocate's brief by July 24, 2023. **See** Order, 7/19/2023. Counsel timely complied and filed a new application to withdraw along with an **Anders** brief expressing his belief that Mother's claims are wholly frivolous.

We note that this Court has extended the **Anders** procedures to appeals taken from decrees terminating parental rights involuntarily. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020) (citation omitted).

---

[2] At the termination hearing, the court mistakenly referred to Child's legal counsel as the guardian *ad litem*. N.T., 5/5/2023, at 4. However, Attorney Ulmer clarified, and the court agreed, that he was acting as legal counsel for Child. **Id.** ("[W]e'll be clear for the record it's as counsel for Child.").

- 3 -

Accordingly, we will begin our review by considering the propriety of Counsel's petition to withdraw and the accompanying brief. *See id.* ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to withdraw pursuant to *Anders*, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. *See id*. By way of confirming that client notification has taken place, our precedent requires that counsel provide this Court with a copy of the letter advising the appellant of his or her rights. *See Millisock*, 873 A.2d at 752; *see also B.G.S.*, 240 A.3d at 661.

The *Anders* brief must also: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. *See id*. Accordingly, a compliant *Anders* brief should "articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." *Id*.

Here, Counsel filed a petition to withdraw stating that, after conscientiously examining the record, he believes Mother's appeal is wholly frivolous. Counsel also attached the letter he sent to Mother pursuant to *Millisock*, along with the petition and *Anders* brief, advising of her right to retain new counsel or proceed *pro se* to pursue her appeal.[3] Counsel also filed an *Anders* brief which includes a summary of the procedural history and facts of the case, discussion of issues that could arguably support Mother's appeal, and his assessment regarding why the appeal is frivolous with citations to relevant legal authority. Accordingly, we conclude that Counsel has complied with the technical requirements of *Anders* and *Santiago*.

We next must proceed to "'conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.'" *B.G.S.*, 240 A.3d at 662 (citation omitted). In his *Anders* brief, Counsel questions whether the court erred and/or abused its discretion in terminating Mother's parental rights. *See Anders* Brief at 10.

We review involuntary termination of parental rights decrees through a deferential standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial

---

[3] Mother has not retained new counsel or filed any documents *pro se* in response to Counsel's letter.

court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (brackets, internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See* 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a). Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 602 Pa.

602, 628, 71 A.3d 251, 267 (2013). To involuntarily terminate parental rights, the petitioner must satisfy both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021) (citation omitted).

In the case *sub judice*, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Section 2511(a)(1) and (b) provides as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

In order to establish grounds for termination pursuant to Section 2511(a)(1) "[a] petitioner ... must demonstrate by competent, clear and convincing evidence, [that t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." *C.M.*, 255 A.3d at 363-64 (citation, footnote, and internal quotation marks omitted). While undefined,

> our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (brackets, internal citations and quotation marks omitted). Furthermore, "[f]ortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." *Id.* at 592 (citation and internal quotation marks omitted).

In assessing Section 2511(a)(1), trial courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. *See C.M.*, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the

termination petition indicates this timeframe is the "most critical period for evaluation" of a parent's conduct. *L.A.K.*, 265 A.3d at 592.

"[T]he question whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of the case." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977). Therefore, "even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months. . ., the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights." *L.A.K.*, 265 A.3d at 593 (citation, brackets, and internal quotation marks omitted). The totality of the circumstances includes consideration of the following: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b)." *Id.* (citation omitted) "[T]he purpose of this analysis is to … avoid a mechanical application of the law regarding the termination of parental rights. The law must be applied with the purpose of serving needs and welfare of each individual child in his or her particular circumstances." *Id.* (citation omitted).

Here, in concluding that Appellees satisfied Section 2511(a)(1), the court emphasized Mother's absence from Child's life and the minimal effort she made in attempting to contact Child, as follows:

> The court found that as of the date of the filing of the petition for involuntary termination of Mother's parental rights, and for a period of years prior to said filings, Mother evidenced both a settled purpose of relinquishing parental claim to the Child and failed to perform her parental duties for a period of years, let alone six months.
>
> A parent has an affirmative duty to be part of their child's life; Mother did not satisfy this duty. Although she was prohibited from contacting Father and Stepmother on Facebook, she had a multitude of other avenues in which to attempt to remain a part of the Child's life. There was an open child support matter. Mother did not attempt to obtain Father's address, which he testified he kept updated with the domestic relations office. Mother admitted she did not make an attempt to file anything and bring the case to court. There was clear testimony that the maternal grandmother had regular contact with the Child and with Father. Father testified his telephone number did not change. In fact, the only thing that Mother alleged she performed to maintain contact or bond with the Child consisted of the purchase of presents for one singular Christmas within the last seven years. This one small act is nowhere near the level of exertion that is required of a parent to maintain a place of importance in their child's life.

Orphans' Court Opinion, 6/15/2023, at 3-4.

The record supports the orphans' court's findings. Initially, Father testified that Mother has not seen Child since fall of 2015, and Mother confirmed it has been "a considerable amount of time" since she has had contact with Child. N.T., 5/5/2023, at 32, 36. During her absence, Mother failed to perform any parental duties, absent purchasing Christmas gifts for Child in 2022, which Father disputes. *See id.* at 29, 32-33, 35-36.

- 10 -

Father further testified that, although Appellees blocked Mother on Facebook, his cell phone number has not changed in years, and he keeps his address up to date with the domestic relations office due to Mother's ongoing obligation to pay child support. **See id.** at 9, 17. Despite the various modes of communication available to Mother, Appellees testified without objection that she has not attempted to contact them. **See id.** at 16-17, 22-23.

The only other effort Mother made to involve herself in Child's life included a failed attempt to file a pleading in their custody case. **See id.** at 27-28. It is unclear from the record what Mother wanted to file, but she testified that the Snyder County court informed her that she needed the opened custody case to be transferred from Mifflin County. **See id.** However, the case was never transferred. Mother's only explanation for why she did not file is because she learned of the termination petition filed by Appellees. **See id.**

Based upon the foregoing, the record supports the court's determination that Mother wholly failed to perform her parental duties in excess of the six months prior to the filing of the termination petition for the purposes of Section 2511(a)(1). We reiterate, "[f]ortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." **L.A.K.**, 265 A.3d at 592 (citation and internal quotation marks omitted).

Having found sufficient grounds for termination pursuant to Section 2511(a)(1), we now turn to Section 2511(b), which affords primary consideration to the developmental, physical, and emotional needs and welfare of the child. *See T.S.M.*, 620 Pa. at 628, 71 A.3d at 267. "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citation omitted). This determination "should not be applied mechanically," but "must be made on a case-by-case basis," wherein "the court must determine each child's specific needs." *Id*. at 1106. Accordingly, there is no "exhaustive list" of factors that must be considered in this context. *Id*. at 1113 n.28.

Nonetheless, a court's Section 2511(b) analysis must include "consideration of the emotional bonds between the parent and child." *T.S.M.*, 71 A.3d at 267. Thus, the court must determine whether the "trauma" caused by sundering the parent-child bond is "outweighed by the benefit of moving the child toward a permanent home." *Id*. at 253 (cleaned up). Further, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

The record does not include any evidence of a bond between Mother and Child. Furthermore, as referenced above, Mother has not seen Child since the fall of 2015. *See* N.T., 5/5/2023, at 32, 36. Stepmother also testified that Child does not ask about Mother. *See id.* at 24-25. Accordingly, we conclude the court's finding that no bond exists between Mother and Child is supported by the record. Orphans' Court Opinion, 6/15/2023, at 5 ("The [c]ourt finds that a bond does not exist between Mother and Child.").

Concomitantly, Stepmother testified that she shares a bond with Child as she is his main caretaker due to Father's work. *See id.* at 21-22 ("My relationship with [Child] is very strong. . . he is my side-kick. We do everything together. We go everywhere together."). She testified that she takes Child to his doctor's appointments and helps with his schoolwork. *See id.* Father also testified to the strong bond between Stepmother and Child. *Id.* at 10 ("I think it's wonderful. I really do. They have a blast together. They go places together. They do everything together."). The evidence of record confirms the orphans' court's determination that termination of Mother's parental rights serves the developmental, physical, and emotional needs and welfare of Child. *See* Orphans' Court Opinion, 6/15/2023, at 5.

Based on the foregoing independent analysis of the orphans' court's termination of Mother's parental rights, we agree with Counsel that the appeal from the decree terminating Mother's parental rights pursuant to Section

2511(a)(1) and (b) is wholly frivolous and our review of the record does not reveal any overlooked non-frivolous issues.

Therefore, we grant Counsel's petition to withdraw and affirm the termination decree.

Petition to withdraw granted. Decree affirmed.


Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/01/2023