J-S01005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: T.R.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.L.N., MOTHER | : : : : : : : : | |
| | : | No. 1022 WDA 2025 |

Appeal from the Decree Entered June 30, 2025
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
41 in Adoption 2025

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                          **FILED: MARCH 13, 2026**

S.L.N. ("Mother") appeals from the decree terminating involuntarily her parental rights to T.R.S., born in February 2025.  Mother's counsel, Patrick W. Kelley, Esquire, has filed an application to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and ***In re V.E.***, 611 A.2d 1267 (Pa. 1992) (extending ***Anders*** procedures to parental termination cases).  We affirm the decree and grant counsel's application to withdraw.

The orphans' court detailed in its Pa.R.A.P. 1925(a) opinion Mother's extensive history with the Erie County Office of Children and Youth ("OCY"), which eventually led to the termination *sub judice*.  Briefly, T.R.S. is the youngest of Mother's nine children.  OCY first became involved with Mother in

_____

[*] Former Justice specially assigned to the Superior Court.

2010.  At that time, only the two oldest children had been born.  OCY secured their removal and they were adjudicated dependent "due to concerns of physical abuse, substance [abuse], inadequate health care needs, inadequate basic needs and lack of supervision."  Orphans' Court Opinion, 10/3/25, at 1. Their dependency matters closed in 2014, with the court granting a permanent legal custodianship arrangement for each child.

Between 2016 and 2023, before T.R.S. was born, Mother gave birth to six more children.  OCY reopened services with Mother in 2023 after the umbilical cord for the youngest child tested positive for amphetamines, methamphetamines, and cocaine.  That child subsequently died at Mother's home.  The other five children were removed by emergency protective order in February 2024.  As part of that process, they were examined and the two surviving youngest, ages one and two, tested positive for cocaine metabolites. As a result, Mother was criminally charged.  Meanwhile, she became pregnant with T.R.S.  In December 2024, Mother's parental rights as to all five children were terminated involuntarily,[1] and in January 2025, she pled *nolo contendere* to one count of endangering the welfare of children and was sentenced to a term of eleven to twenty-three months of incarceration.

The orphans' court explained T.R.S.'s particular history in the following manner:

---

[1] This Court affirmed the decrees terminating Mother's parental rights as to those children.  **See Matter of Adoption of S.E.N.**, ____ A.3d ____, 2025 WL 2964310 (Pa.Super. 2025) (non-precedential decision).

T.R.S. was removed from Mother's care by [emergency protective order] shortly after his birth, due to Mother's incarceration;[2] significant safety concerns with Mother's ability to care for T.R.S. due to Mother being an indicated perpetrator of abuse for failure to supervise the children; lack of progress with her treatment plan; and involuntary termination of [five of her] children in December of 2024.

On March 3, 2025, [OCY] filed a dependency petition alleging T.R.S. was without proper parental care or control in the care of Mother. The petition included a motion for a finding of aggravated circumstances relating to Mother due to the involuntar[]y termination of her parental rights to T.R.S.'s siblings.

The adjudication hearing was held in front of the hearing officer on March 11, 2025. Mother was not present[.] However, [Attorney Kelley] was present and proceeded on her behalf, [OCY] was represented by Attorney Amy Jones ("Attorney Jones")[,] and Attorney Michelle Alaskey ("Attorney Alaskey") was guardian *ad litem* ("GAL") for T.R.S. T.R.S. was adjudicated dependent and [OCY's] motion for aggravated circumstances was granted.

The dispositional hearing was held on March 25, 2025. Mother was present and represented by Attorney Kelley. [OCY] was represented by Attorney Jones[,] and Attorney Alaskey was present on behalf of T.R.S. At the conclusion of the dispositional hearing the Juvenile Court held that [OCY] was not obligated to make reasonable efforts to provide Mother with services and a permanency goal of adoption was in T.R.S.'s best interest.

On April 23, 2025, [OCY] filed an [involuntary termination of parental rights petition] pursuant to 23 Pa.C.S. § 2511(a)(2) and (b). The trial on the [termination] petition was held on June 20, 2025. Mother was present and represented by Attorney Kelley. [OCY] was represented by Attorney Jones, and Attorney Alaskey was present as legal counsel for T.R.S. [because the court determined that T.R.S.'s legal and best interests merged due to his age]. . . . At the trial [OCY] presented testimony of ongoing caseworker, Carrie Bielak ("Ms. Bielak"). Attorney Kelley

_____

[2] J.S. ("Father") was also incarcerated at that time. Although the court terminated Father's rights involuntarily at the same time as Mother's, his case is not part of the instant appeal.

presented the testimony of Colleen Flatley ("Ms. Flatley") . . . and Mother.

Ms. Bielak testified that she is the ongoing caseworker for T.R.S. and his siblings. Ms. Bielak testified to Mother's history with the agency regarding her eight other children as set forth above . . . . Ms. Bielak further testified that despite [OCY]'s assistance on multiple occasions and involvement with numerous service providers over the last sixteen years, Mother has never been able to demonstrate that she can safely parent. Additionally, Ms. Bielak testified that throughout the dependency proceedings for the T.R.S.'s siblings, Mother blamed everyone else for the removal of the children from her home and never took accountability for anything; including her substance use. In fact, the day before her July 6, 2024 arrest, while pregnant with T.R.S., Mother tested positive for methamphetamine, amphetamine[,] and suboxone.

Finally, Ms. Bielak testified that T.R.S. has been placed in a pre-adoptive foster home with his siblings since his removal. Ms. Bielak opined that since T.R.S. is in the only home he has ever know[n] with his siblings, and does not know Mother, the termination of her parental rights would be in his best interest.

Ms. Flatley testified that she is employed as a case manager at the Mercy Center for Women ("Mercy Center"). She described the Mercy Center as a structured residential facility for women experiencing homelessness. Ms. Flatley testified Mother came to reside at the Mercy Center on May 28, 2025, [upon being released on parole,] and has been compliant with the program so far. When asked about Mother's past substance use, Ms. Flatley testified that she believed Mother had disclosed prior substance abuse on her application, but was unfamiliar with her day[-]to[-]day treatment goals, such as obtaining housing.

Mother testified that after she was released from incarceration she began residing at the Mercy Center. Mother stated she will remain on parole for the next three years and is participating in programing at the Mercy Center. Mother described participating in programs . . . for her mental health; however, due to her recent arrival at the Mercy Center . . ., her participation in any programming was limited.

*Id*. at 3-6 (citations, quotation marks, and parenthetical numbers omitted, some capitalization and citations altered).  Attorney Alaskey echoed Ms. Bielak's opinion that termination was in T.R.S.'s best interests.[3]  The orphans' court found that OCY had met its burden and therefore granted the petition to involuntarily terminate Mother's parental rights.

Mother timely filed *pro se* a notice of appeal to this Court.  In response to this Court's directive to file a concise statement of issues raised on appeal, Attorney Kelley indicated his intent to submit an *Anders* brief.  As noted, the orphans' court authored a Rule 1925(a) opinion in support of affirmance.

Before reaching the merits of this appeal, we must first address counsel's request to withdraw, which we review using the following legal principles:

> To withdraw pursuant to *Anders*, counsel must comply with the following requirements:
>
>> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

---

[3] Attorney Alaskey maintains this opinion on appeal.  Although she chose not to submit a brief, she sent a letter agreeing with both Attorney Kelley that the appeal is frivolous and with the reasoning of the orphans' court in terminating Mother's parental rights.  *See* Letter, 12/5/25.  OCY likewise concurred with Attorney Kelley and relied upon the orphans' court opinion in lieu of filing its own brief.  *See* Letter, 12/4/25.

Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights.

Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa.Super. 2020) (cleaned up).

Mother has not responded to counsel's application to withdraw or *Anders* brief. Upon review of counsel's filings, we are satisfied that counsel has substantially complied with the aforementioned requirements.[4] Thus, we now turn to the merits of the claims outlined in the brief, and then "we must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Id*. at 662 (cleaned up). In the *Anders* brief, counsel has identified two potential questions for our consideration:

_____

[4] We note that Attorney Kelley incorrectly advised Mother that, in addition to hiring new counsel or proceeding *pro se*, she also had the option to ask for new court-appointed counsel. Since Mother has not detrimentally relied upon that incorrect advice, we decline to send the matter back to counsel simply to remove that statement.

1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the agency established sufficient grounds for termination under 23 Pa.C.S. § 2511?

2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that termination of [Mother]'s parental rights was in [T.R.S.'s] best interests under [§] 2511(b)?

*Anders* brief at 8 (cleaned up).

As these issues attack the termination petition, we consider them mindful of the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of B.G.S.*, 240 A.3d at 662 (cleaned up).

Involuntary termination of parental rights is governed by 23 Pa.C.S. § 2511, which sets forth the requisite two-part analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

- 7 -

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id*. at 663 (cleaned up).

Here, the orphans' court terminated Mother's parental rights pursuant to § 2511(a)(2) and (b), which provide for termination where:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have elaborated upon § 2511(a)(2) in this way:

> The grounds for termination of parental rights under [§] 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct.
>
> Unlike [§] (a)(1), [§] (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in [§] (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong,

- 8 -

continuous parental ties, which the policy of restraint in state intervention is intended to protect. **This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.**

Thus, while sincere efforts to perform parental duties . . . can preserve parental rights under [§] (a)(1), those same efforts may be insufficient to remedy parental incapacity under [§] (a)(2). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*In re Z.P.*, 994 A.2d 1108, 1117–18 (Pa.Super. 2010) (cleaned up, emphasis in original).

In the matter *sub judice*, the orphans' court determined that OCY had demonstrated by clear and convincing evidence that termination was warranted, explaining its findings thusly:

Mother's contact with [OCY] began in 2010[,] when her two oldest children were removed from her care and adjudicated dependent due to concerns of physical abuse, substance [abuse], inadequate health care needs, inadequate basic needs and lack of supervision. That case was closed in 2014 with [permanent legal custodianship]. T.R.S.'s other five siblings came into care in February 2024, for similar reasons. Mother was set up with service providers and given a treatment plan, however, just as in the 2010 case, she was unable to alleviate the circumstances that led to the children's dependency. The record repeatedly reflects that Mother has historically been unable to alleviate the circumstances that led [to] the removal of T.R.S.'s seven siblings from her care because she refused to acknowledge them.

Despite having the siblings removed from her care with a permanency goal of reunification and agency assistance, Mother continued to use controlled substances while pregnant with T.R.S. Fortunately, due to Mother's arrest and incarceration, T.R.S. was not born drug dependent. However, he was born while his Mother was incarcerated for endangering the welfare of his siblings.

- 9 -

Ultimately T.R.S.'s permanency cannot be put on hold in the hopes that now that Mother is back in the community she will somehow be able to recognize and remedy circumstances that have repeatedly placed her children's safety, mental health, and well-being at risk.

Orphans' Court Opinion, 10/3/25, at 8-9 (cleaned up).

Attorney Kelley determined that any challenge to the court's decision regarding § 2511(a)(2) or (b) would be wholly frivolous. Specifically:

[T]here was no opportunity for Mother to participate in court-ordered services, and there is no record of her obtaining reunification services on her own other than finding housing. As the [orphans'] court noted in its opinion, . . . Mother's child welfare history is extensive. Since there was no real mechanism by which Mother could demonstrate the likelihood that she could overcome the conditions that led to [T.R.S.'s] placement, she was left with the unenviable and legally unsupportable argument that she was entitled to more time to prove herself. Based upon these facts, termination was legally appropriate and this appeal is without merit.

. . . .

[Furthermore,] as a practical matter, based upon these facts, any party would be hard pressed to determine that a bond existed between Mother and [T.R.S]. However[,] the child is [with] a permanent resource, and no evidence was presented to indicate that severance of a parental bond would negatively affect the child.

*Anders* brief at 17-18, 20 (cleaned up).

Our review mirrors that of counsel and the record bears out the conclusions of the orphans' court. It is plain that OCY adduced sufficient evidence to support termination of Mother's parental rights as to T.R.S. pursuant to § 2511(a)(2) and (b). Satisfied that the issues identified in the *Anders* brief are devoid of merit, we note that our independent review of the

record has revealed nothing else potentially worthy of appellate review that counsel failed to detect. Accordingly, we affirm the decree terminating Mother's parental rights as to T.R.S. and grant counsel's application to withdraw.

Decree affirmed. Application of Patrick W. Kelley, Esquire, to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/13/2026