J-S42001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.D.B., FATHER | : | |
| | : | |
| | : | No. 1648 EDA 2023 |

Appeal from the Order Entered May 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001349-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Y.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.D.B., FATHER | : | |
| | : | |
| | : | No. 1650 EDA 2023 |

Appeal from the Decree Entered May 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000098-2023

BEFORE:  BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 19, 2023**

M.D.B. ("Father)" appeals from the decree entered on May 30, 2023, involuntarily terminating his parental rights as to S.Y.P., born in August 2019, as well as the order entered on the same date changing S.Y.P.'s permanent

placement goal to adoption.[1]  Father's counsel, Daniel S. Kurland, Esquire, has filed an application to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the decree terminating Father's parental rights and the order granting the permanency goal change, and we grant counsel's application to withdraw.

We glean the following facts from the certified record.  The Philadelphia Department of Humans Services ("DHS") first became involved with S.Y.P. on August 13, 2019, when it learned that Mother had given birth to S.Y.P.  Before then, Mother had substantial involvement with DHS due to her unstable housing and mental health problems.  Of immediate relevance, approximately two months before S.Y.P. was born, another of Mother's children, I.J.H., was placed under the care of a pre-adoptive foster parent, C.B.[2]  Based on Mother's continued issues, as well as DHS's inability to locate Father, DHS obtained an order of protective custody for S.Y.P. two days after learning of her birth.  S.Y.P. was placed with C.B. and has been living with her since S.Y.P. was discharged from the hospital at two days old.

---

[1] In a different decree entered the same day, the orphans' court also terminated the parental rights of S.Y.P.'s mother, A.P. ("Mother").  We address Mother's appeal in a separate writing.

[2] C.B. also previously adopted two of Mother's other children after a court involuntarily terminated Mother's parental rights.  ***See*** N.T. Hearing, 5/30/23, at 44.

Every five to six months thereafter, Mother met with representatives from Philadelphia's Community Umbrella Agency ("CUA") to discuss single case plan ("SCP") objectives. Father did not attend any meetings, as his whereabouts were unknown. As a result, Father did not have any established SCP objectives and CUA did not authorize him visitation as to S.Y.P. The goal was initially for reunification between Mother and the two children.

On March 14, 2023, DHS filed petitions seeking to change S.Y.P.'s permanency goals to adoption by C.B., as well as termination of the parental rights of both Father and Mother.[3] The court held a hearing as to both matters on May 30, 2023, where it heard from Corthea Howell, a CUA case manager. Mother also testified after being called by Emily Cherniak, Esquire, the court-appointed counsel and guardian *ad litem* ("GAL") for both S.Y.P. and I.J.H.[4] For reasons that are not apparent in the record, Father did not appear at the hearing, though he was represented by counsel.

Ms. Howell testified as to the conditions triggering the need to place both children, as well as the lack of any relationship between Father and S.Y.P. It was noted that Father was not listed on S.Y.P.'s birth certificate. **See** N.T. Hearing, 5/30/23, at 26. Ms. Howell did not personally observe any interactions between Father and S.Y.P. **Id**. at 33. However, I.J.H. had

---

[3] The same day, DHS filed nearly identical petitions with regard to I.J.H.

[4] The GAL evinced testimony showing that there was no conflict between S.Y.P.'s legal interest and best interests, since three-year-old S.Y.P. was too young to express her wishes. **See** N.T. Hearing, 5/30/23, at 45-46.

reported that Father was present without permission during at least one visit between Mother and both children, which made I.J.H. uncomfortable. *Id*. at 17. Father eventually reached out to an aide of Ms. Howell in March 2023, slightly more than three and one-half years after S.Y.P. was placed with the pre-adoptive resource parent and around the same time the termination petitions were filed. *Id*. at 24. Ms. Howell offered to meet with Father that month to discuss setting up a schedule for supervised visitation, but Father never reestablished contact with CUA. *Id*. He likewise did not submit to a paternity test ordered by the trial court during a permanency hearing in March 2023. *Id*. at 25.

In addition, Ms. Powell attested to the relationship between S.Y.P. and C.B., the pre-adoptive foster parent. S.Y.P. had been under C.B.'s care nearly her entire life and referred to the residence she lives in as "home." *Id*. at 34-35. C.B. continued to meet S.Y.P.'s basic needs. *Id*. S.Y.P. called the resource parent "mom," and shared her primary parental bond with her. *Id*. at 35-36. Ms. Powell believed that it was in the best interest of S.Y.P. for the court to terminate the parental rights of both Mother and Father, and to free both S.Y.P. and I.J.H. for adoption. *Id*. at 36. After Ms. Powell's testimony, the GAL advanced the same position.

At the conclusion of the hearing, the trial court articulated that it was granting DHS's petition for the permanency goal change as to both children and terminating Father's and Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), as well as § 2511(b). It also issued a decree

concerning termination and entered an order as to the goal change at each of the respective dockets the same day. Father filed timely notices of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.[5] We consolidated the matters *sua sponte*.

On appeal, Father's counsel filed both an **Anders** brief and a petition to withdraw as counsel, which we must first consider before addressing the underlying merits. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (extending the **Anders** procedure to appeals from involuntary termination decrees); **In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (cleaned up).

The following legal principles guide our review:

> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

---

[5] The trial court entered a notice of compliance with Rule 1925(a), referring us to relevant portions of the transcript from the termination hearing, wherein the court stated on the record its reasoning for its findings.

If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Cook**, 175 A.3d 345, 348 (Pa.Super. 2017) (cleaned up).

Our High Court further delineated counsel's duties as follows:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

Based upon our examination of counsel's petition to withdraw and **Anders** brief, we conclude that counsel has complied with the technical requirements set forth above.[6] As required by **Santiago**, counsel presented a history of the case, referred to issues that arguably support the appeal, stated his conclusion that the appeal is frivolous, and cited case law. **See Anders** brief at 8-21. We must therefore "'make a full examination of the proceedings and make an independent judgment to decide whether the appeal

---

[6] Father did not file a response to counsel's petition.

is in fact wholly frivolous." ***Commonwealth v. Flowers***, 113 A.3d 1246,

1249 (Pa.Super. 2015) (quoting ***Santiago***, ***supra*** at 354 n.5).

The ***Anders*** brief identifies the following claims:

1.   Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8).

2.   Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S. § 2511(b).

3.   Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his child.

***Anders*** brief at 7 (cleaned up).[7]

We begin with the applicable standard of review.

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences

---

[7] We note with displeasure that while the ***Anders*** brief lists three issues on appeal, it contains only a single argument section addressing them all, in violation of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein").  Counsel is cautioned to abide by the Rules of Appellate Procedure in the future.

or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). We note that the trial court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Further, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Before terminating parental rights, our case law mandates that the court engage in a bifurcated process. *In re C.L.G.*, 956 A.2d 999, 1004 (Pa.Super. 2008) (citations omitted). More particularly,

the focus is [initially] on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child.

- 8 -

*Id*. (citations omitted). The bases for termination must be proven by clear and convincing evidence, or evidence "that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Int. of M.E.*, 283 A.3d 820, 831 (Pa.Super. 2022) (citation omitted).

The first issue arguably supporting an appeal concerns whether DHS met its burden of proving any one of the subsections of § 2511(a). We note that we "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our discussion on § 2511(a)(1), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a). As to this subsection, our High Court further elucidated:

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up).

In finding that DHS proved § 2511(a)(1), the trial court stated:

> [Father] in the six months preceding the filing of the petition ha[d] relinquished any parental claim and had failed to perform any parental duties. There was no indication that [Father] ha[d] availed himself or engaged in any case management plan to allow him to be a considered reunification resource in the six months preceding the filing of the petition. He failed to show up for paternity testing. He did not avail himself for visits, even though he was advised he could have visits with [S.Y.P].

N.T. Hearing, 5/30/23, 85-86.

Consistent with his obligations in accordance with **Santiago**, Attorney Kurland presented this Court with arguments that might support a challenge regarding § 2511(a). In so doing, he referenced the trial court's rationale above and offered his similar conclusion that this issue lacked merit because Father "did not avail himself to services for the entire life of the case and has not demonstrated an interest in being a parent." **Anders** brief at 17-18.

Upon review, we determine that the court did not abuse its discretion in finding that DHS proved § 2511(a)(1) by clear and convincing evidence. The testimony from the hearing made it clear that Father did not make himself known to DHS until March 2023, over three and one-half years after S.Y.P. was placed with C.B. During that period, CUA had no knowledge as to his whereabouts. Even after Father made contact, he nonetheless failed to comply with a court order for paternity testing, contact any representative of DHS to establish a visitation schedule, or participate in any authorized supervised visits with S.Y.P. There was no evidence that Father ever provided for any educational, medical, or other needs for S.Y.P. at any point in her life.

- 10 -

Quite tellingly, Father did not appear for the goal change and termination hearing. In short, there was no evidence that he engaged in any "communication and association" necessary to "develop and maintain the parent-child relationship." *In re Adoption of L.A.K.*, *supra* at 592.

As Father refused to perform parental duties for far longer than the six months immediately preceding the filing of the termination petition, we agree with counsel's assessment that this aspect of Father's appeal is frivolous.

The next issue in the *Anders* brief arguably supporting an appeal is a challenge to whether DHS sufficiently established that the termination of Father's parental rights satisfied § 2511(b). In whole, that provision provides as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court has recently framed the analysis of this provision thusly:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.

- 11 -

Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.

Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Int. of K.T.*, *supra* at 1105–06 (cleaned up).

We have noted that "the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). If there is a bond, "the trial court must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship[.]'" *Int. of M.E.*, *supra* at 837 (citation omitted). Additionally, while termination of parental rights has "heavy and irrevocable consequences," it is "intended to prevent children from growing up in an indefinite state of limbo, without parents capable of caring for them, and at the same time unavailable for adoption by loving and willing foster families." *Int. of K.T.*, *supra* at 1111 (cleaned up).

As to this subsection, the trial court succinctly concluded at the termination hearing that "[Father] has had no relationship with [S.Y.P.] for the duration of this case. She clearly does not look to him for any parent[-

]child needs." N.T. Hearing, 5/30/23, at 91. In the same vein, counsel indicated in the ***Anders*** brief that "there was no evidence to support a parent-child bond existed between Father and child." ***Anders*** brief at 18 (unnecessary capitalization omitted).

After consideration, we find no error with the court's conclusion that § 2511(b) was satisfied. For Father's argument to prevail, he was required to demonstrate not only the existence of a bond between him and S.Y.P., but a necessary and beneficial relationship. The credible testimony from Ms. Powell established that Father had not met **any** of the child's parental needs, and in fact had not even taken the initial steps to arrange for visitation. Since the court's determination that there was no relationship between Father and S.Y.P. is supported by the record evidence, we will not disturb it. It follows, then, that S.Y.P. would not suffer any "extreme emotional consequences" by the court severing the nonexistent connection between her and Father. ***Int. of M.E.***, ***supra*** at 837.

Moreover, termination of Father's parental rights is proper due to the clear bond that has developed between S.Y.P. and C.B., the pre-adoptive foster parent. C.B. has attended to all the educational, medical, and special needs of S.Y.P. The child refers to C.B. as "mom." C.B. has also already adopted several of S.Y.P.'s siblings, and is likewise seeking to adopt I.J.H., which will allow these children to partially remain an intact family. Accordingly, there was overwhelming evidentiary support for the

determination that should S.Y.P. be removed from foster placement, it will cause her substantial harm.

Therefore, the trial court did not abuse its discretion in finding that DHS proved § 2511(b) by clear and convincing evidence.

The final potential issue on appeal contends that the trial court erred because Father "demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his child." **Anders** brief at 11. We interpret this claim to support a challenge to S.Y.P.'s permanency goal change from reunification to adoption.

"With regard to a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court[.]" **Interest of T.M.W.**, 232 A.3d 937, 944 (Pa.Super. 2020) (citation omitted). Our standard for reviewing this type of order is abuse of discretion. **Id**.

On this matter, the trial court elucidated as follows with regard to the goal change for S.Y.P. and her sibling, I.J.H.:

> I do find that [DHS] has presented sufficient testimony and evidence for this court to conclude that adoption would be the best goal for these children. These children have been in a loving home . . . with a resource parent who's been caring for them as a parent cares for a child. And they're in a home most notably with another biological sibling, and I find it would be in their best interest to free them for adoption and change the goal for adoption at this time.

N.T. Hearing, 5/30/23, at 91 (cleaned up). Counsel likewise contended that "[t]he consistent history of Father's refusal to fully accept services demonstrated clearly and convincingly that a goal change to adoption in a

loving and tolerant family setting would be the disposition best suited to the safety, protection, and physical, mental and moral welfare of the child." ***Anders*** brief at 13-14.

As we have already discussed above, the evidence abundantly highlighted that S.Y.P.'s best interest would be served via adoption by C.B. We readily conclude then that the trial court did not abuse its discretion in changing S.Y.P.'s goal from reunification to adoption for the same reasons stated in our analysis as to § 2511(b). This challenge is therefore without merit.

Having addressed the arguable issues raised in the ***Anders*** brief, we lastly determine that our "simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" has revealed no additional issues that counsel failed to address. ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*). Therefore, we affirm the decree terminating Father's parental rights and the order changing S.Y.P.'s permanency goal from reunification to adoption, and we grant counsel's petition to withdraw.

Application of Daniel S. Kurland, Esquire, to withdraw as counsel is granted. Decree affirmed. Order affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:  12/19/2023